United States District Court
Southern District of Texas

**ENTERED**

July 09, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOE SHIELDS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-CV-00018 |
| | § | |
| ERIC B. DICK, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This lawsuit arises from the receipt of a single text message. Plaintiff Joe Shields alleges that Defendant Eric B. Dick violated federal and state law by sending him one unsolicited text. At this preliminary stage of the case, I am asked to decide two legal questions: (1) whether the receipt of one text message is sufficient to confer constitutional standing; and (2) if so, whether Shields has sufficiently stated a claim for relief. Because I find that the standing requirement imposes a qualitative test, rather than a quantitative one, and the live pleading sufficiently alleges a tangible injury, I conclude that Shields has standing to proceed with his claim for relief. Additionally, because the First Amended Complaint provides a detailed description of the alleged improper conduct, Shields has plausibly stated a claim upon which relief can be granted.

## BACKGROUND

The First Amended Complaint makes the following allegations against Dick: At approximately 3:06 p.m. on September 14, 2019, Shields received a text message. The text message stated: "Hi! :)  Im [sic] Jen a volunteer.  Its [sic] a crime to feed the poor.  Will

1

you vote for Eric Dick for City Council to change that law?  Sign the petition."  Dkt. 39 at 6.

Shields alleges that Dick, a candidate for Houston City Council, working in concert with Twilio International, Inc., used an automated telephone dialing system ("ATDS") to send the unwanted and unauthorized text message to his cell phone number.  *Id.* at 5.  Prior to receiving the text message, Shields claims he "did not have any dealings with Defendants.  Further, Plaintiff never provided prior express consent to the Defendants or anyone acting in concert with the Defendants for impersonal text message calls to be made to Plaintiff's cellular telephone number."  *Id.* at 3.

As a result of receiving this single unwanted and unauthorized text message, Shields brings two causes of action: (1) a claim under the Telephone Consumer Protection Act ("TCPA"); and (2) a claim under Section 305.053 of the Texas Business and Commerce Code.  Shields alleges that the unsolicited text message sent to his cell phone caused him multiple injuries.  In the section of the First Amended Complaint titled "Article III Standing," Shields states:

> Plaintiff has suffered concrete injuries through the making of an unwanted and unauthorized text message call to Plaintiff's cellular telephone number. The Defendant's unwanted and unauthorized text message calls invaded Plaintiff's privacy and caused the Plaintiff to suffer actual harm, nuisance and aggravation.  Plaintiff was forced to waste precious time in dealing with the text message call.  The unwanted and unauthorized text message call caused the Plaintiff to suffer lost value of the cellular services Plaintiff pays for, used up space on Plaintiffs [sic] cell phone and caused the Plaintiff to suffer a loss of the use and enjoyment of his cell phone.  Plaintiff's injuries include wear and tear to his phones [sic] data, memory, software, hardware and battery among other harms.  Plaintiff's concrete injuries are redressable by rulings of this Court to grant damages to make Plaintiff whole and injunctive relief as provided for by law.

*Id.* at 2–3.

Dick has filed a Motion to Dismiss.[1]  *See* Dkt. 19.  In the motion, Dick asserts that Shields fails to satisfy the requirements for standing under Article III of the United States Constitution.  Dick also argues that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Shields fails to state a claim upon which relief can be granted.

## THE TCPA AND SECTION 305.053 OF THE TEXAS BUSINESS AND COMMERCE CODE

### A.   THE TCPA

After determining that "residential telephone subscribers consider automated or prerecorded telephone calls . . . to be a nuisance and an invasion of privacy," Congress enacted the TCPA in 1991 to restrict interstate telemarketing.  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394.  *See also Barr v. Am. Ass'n of Political Consultants, Inc*, ---S. Ct.---, 2020 WL 3633780, at *3 (U.S. July 6, 2020) (The TCPA "responded to a torrent of vociferous consumer complaints about intrusive robocalls.  A growing number of telemarketers were using equipment that could automatically dial a telephone number and deliver an artificial or prerecorded voice message. . . .  Consumers were 'outraged' and considered robocalls an invasion of privacy regardless of the content or the initiator of the message.") (internal quotation marks and

---

[1] The Motion to Dismiss sought dismissal of the Original Complaint.  Shields recently filed a First Amended Complaint, adding Twilio International, Inc. as a defendant.  Because the allegations against Dick are identical in both the Original Complaint and the First Amended Complaint, I consider his Motion to Dismiss as if it seeks dismissal of the First Amended Complaint.

3

citation omitted).  The TCPA prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system[2] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."   47 U.S.C. § 227(b)(1)(A)(iii).   Although the TCPA does not define what constitutes a "call," the Federal Communications Commission, the agency charged with implementing the TCPA, has interpreted the TCPA to "encompass[ ] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," generally termed text messages.  *In re Rules & Regulations Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003).  *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

The TCPA creates a private right of action in which a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).

B.    **SECTION 305.053 OF THE TEXAS BUSINESS AND COMMERCE CODE**

Section 305.053 of the Texas Business and Commerce Code creates a private cause of action under state law for violations of the TCPA.  Under Section 305.053, a "person who receives a communication that violates [the TCPA] . . . may bring an action in this

---

[2] The TCPA defines an "automatic telephone dialing system" as equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator," and to dial such numbers.  47 U.S.C. § 227(a)(1).

state against the person who originates the communication." TEX. BUS. & COM. CODE §

305.053(a). Section 305.053 "proscribes only that conduct which is also prohibited by the

TCPA. If no violation of the TCPA exists, there is no violation of" Section 305.053.

*Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014).

## DISCUSSION

### A.   SHIELDS HAS SATISFIED THE REQUIREMENTS OF ARTICLE III STANDING

#### 1.   Legal Standard

The issue of standing presents a "threshold jurisdictional question" in any federal

lawsuit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The requirement

that a party must have standing to bring suit flows from Article III of the Constitution,

which limits the scope of federal judicial power to the adjudication of "cases" or

"controversies." U.S. CONST. art. III, § 2. "No principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of

federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 37 (1976). Standing must be considered "before other challenges since

the court must find jurisdiction before determining the validity of a claim." *Moran v.*

*Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal quotation marks and

citation omitted).

Federal Rule of Civil Procedure 12(b)(1) provides that a case should be dismissed

if the court does not possess subject matter jurisdiction. Subject matter jurisdiction fails if

the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475

U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court,

it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997). Although Dick mistakenly moves to dismiss for lack of constitutional standing under Rule 12(b)(6), I will consider the request as if it were made under Rule 12(b)(1).

In order to have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "'Injury in fact' reflects the statutory requirement that a person be 'adversely affected' or 'aggrieved,' and it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 n.14 (1973). The Supreme Court has held that "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted). For an injury to be "concrete," it must be "real" and "not abstract." *Id.* An injury is "particularized" if a plaintiff was affected in "a personal and individual way." *Id.* The alleged injury in fact does not need to be substantial because "the injury in fact requirement under Article III is qualitative, not quantitative, in nature." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357–58 (5th Cir. 1999). *See also OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 612 (5th Cir. 2017) (holding that injury in fact "need not measure more than an 'identifiable trifle'").

The violation of one's statutory rights, by itself, may satisfy the injury in fact requirement for Article III standing.   "Congress may create a statutory right of entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 455 (5th Cir. 2017) (quotation marks and citation omitted).   However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.   Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549.

2.      **Analysis**

When Congress passed the TCPA almost 20 years ago, it expressly found that an unwanted telemarketing call is a nuisance and an invasion of privacy.  *See* Pub. L. No. 102-243, § 2.  *See also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (finding that in enacting the TCPA and prohibiting auto-dialed telemarketing calls without prior consent, Congress determined such calls are nuisances and invasions of privacy).  This determination applies with equal force to telemarketing text messages sent to a cell phone number.   "The undesired buzzing of a cell phone from a text message, like the unwanted ringing of a phone from a call, is an intrusion into peace and quiet in a realm that is private and personal."  *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020). Accordingly, "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA."  *Melito v. Experian*

*Mktg. Sols., Inc.*, 923 F.3d 85, 88 (2d Cir. 2019).  Because the receipt of an unwanted automated text message poses the exact type of concrete harm that Congress chose to recognize as legally cognizable in the TCPA, I conclude that Shields has sufficiently demonstrated injury in fact resulting from an automated text message sent to his personal cell phone.  *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019) ("[T]he private right of action [under the TCPA] plainly satisfies the demands of Article III.  In enacting . . . the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests.").  The fact that Shields received only one text message is immaterial.  A single unsolicited automated call has been found to confer Article III standing.  *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017).

Even if I determined that an alleged violation of statutory rights provided by the TCPA was insufficient to meet the injury in fact requirement for Article III standing, the specific allegations in the First Amended Complaint easily clear the low bar required to satisfy the injury in fact test.

Shields alleges that Dick's unsolicited automated text message sent to his cell phone caused him multiple injuries.  For starters, Shields contends that the single text message invaded his privacy and resulted in aggravation and a nuisance.  "[S]everal federal courts in Texas have addressed this same argument and held that—especially at the pleading stage—an allegation that a plaintiff had to endure the nuisance of unwanted calls satisfies the injury-in-fact requirement for a TCPA claim."  *Maydwell v. Ciara Fin. Servs., Inc.*, No. 3:19-CV-00051-BT, 2019 WL 5102716, at *2 (N.D. Tex. Oct. 10, 2019).  *See also*

*Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 4:18-CV-00118-ALM-CAN, 2019 WL 1119365, at *3 (E.D. Tex. Jan. 11, 2019) ("[H]owever small or trifling," Article III is satisfied by allegations of nuisance and invasion of privacy.); *Morris v. Unitedhealthcare Ins. Co.*, No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at *5–6 (E.D. Tex. Nov. 9, 2016) (finding an injury-in-fact where Plaintiff was annoyed and harassed by unwanted telemarketing calls).

Shields also alleges that the text message took up space on his cell phone and caused him to suffer the loss of the use and enjoyment of his cell phone. This loss is a tangible harm that courts have found constitutes a concrete injury. *See Melito*, 923 F.3d at 94 ("[T]he receipt of unwanted advertisements *is itself* the harm."); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("The harm here was the receipt of two telemarketing messages without prior consent.").

Shields further claims that the text message caused wear and tear to his phone's battery. Although admittedly small, this type of harm has also been found to satisfy the injury in fact requirement for Article III standing. *See Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1312 (N.D. Ga. 2016) (recognizing depleted battery life as a concrete injury resulting from the receipt of unsolicited automated text messages); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645 (N.D.W. Va. 2016) ("[A]ll ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could be consequential.").

Next, Shields alleges that Dick's text message "forced [him] to waste precious time in dealing with the text message call." Dkt. 39 at 2. Wasted time is a widely recognized

9

type of concrete injury. *See Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) ([U]unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements *waste the recipients' time* and impede the free flow of commerce.") (emphasis added); *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (holding that the recipient of a fax who "deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk"); *Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010) (explaining that being "forced to spend time and money complying with regulations" is an injury in fact); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. CV 2:16-1012, 2017 WL 5079181, at *5 (W.D. La. Nov. 1, 2017) (holding that allegations of wasted time due to receipt of unsolicited fax messages suffice to establish concrete injury).

To summarize, Shields alleges a laundry list of harms. For standing purposes at this early stage in the case, each alleged harm—aggravation and nuisance, the text message taking up space on his cell phone, the depletion of his phone's battery life, and his wasted time dealing with the message—is, by itself, sufficient to confer standing. Taken together, this is not a close call. Undoubtedly, Shields has sufficiently alleged injury in fact, thus satisfying the requirements of Article III standing.

**B.    SHIELDS' LIVE PLEADING CONTAINS SUFFICIENT FACTUAL MATTER, WHEN ACCEPTED AS TRUE, TO STATE A CLAIM TO RELIEF THAT IS PLAUSIBLE ON ITS FACE.**

### 1.    Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted.   *See* FED. R. CIV. P. 12(b)(6).   To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it "must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"   *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).   Importantly, Rule 12(b)(6) motions to dismiss are "viewed with disfavor and [are] rarely granted."   *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

### 2.    Analysis

Dick maintains that Shields has not plausibly stated a claim upon which relief can be granted.    Specifically, Dick contends that the live pleading contains vague

generalizations from which the Court could not conclude that Dick is liable for the misconduct alleged.  Cutting to the chase, Dick's argument is spurious.

Shields specifically alleges the date and time he received the unwanted and unauthorized text message: September 14, 2019 at approximately 3:06 pm.  Shields has also alleged facts from which the Court could reasonably conclude that Dick is the one responsible for sending the text message.  Indeed, the alleged text message's contents identify that 'Jen' sent the text message on Dick's behalf.  "Hi! :) Im [sic] Jen a volunteer. Its [sic] a crime to feed the poor.  Will you vote for **Eric Dick** for City Council to change that law?  Sign the petition."  Dkt. 39 at 5 (emphasis added).  Shields identifies the phone number that sent the text message as (832) 246-7745 and contends that the text message in question originated from an automated dialer.  Shields also alleges that Dick worked with Twilio International, Inc., a test message blaster, to transmit unwanted and unauthorized text messages to promote Dick's candidacy for public office.

Dick makes much of the fact that Shields admits that Dick did not own the phone number that sent the disputed text message.  But that is completely irrelevant.  Dick need not be the one who actually sent the text message to Shields's cell number to be liable for a TCPA violation.  Under the TCPA, it is unlawful to "make any call . . . *using* any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  *See also Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("A party who makes a call using an automatic telephone dialing system uses the *system* to make the call, regardless of whether the recipient answers, and thereby triggers TCPA liability.").  In short, Shields's First Amended Complaint easily

12

contains "enough facts to state a claim to relief that is plausible on its face" under the

TCPA.  *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion to Dismiss

(Dkt. 19) be **DENIED**.

SIGNED at Houston, Texas, this 9th day of July, 2020.

_____

ANDREW M. EDISON

UNITED STATES MAGISTRATE JUDGE